# Exhibit 2

VILLAGE OF BLOOMINGDALE

ORDINANCE NO. **89-7**

AN ORDINANCE REZONING APPROXIMATELY 8.4 ACRES OF CERTAIN PROPERTY LOCATED AT THE SOUTHEAST CORNER OF ARMY TRAIL ROAD AND KNOLLWOOD DRIVE, EXTENDED, KNOWN AS 25W147 AND 25W125 WEST ARMY TRAIL ROAD FROM B-1 TO B-3, GENERAL SERVICE BUSINESS DISTRICT, PLANNED UNIT DEVELOPMENT, TO PERMIT THE CONSTRUCTION AND OPERATION OF A RETAIL SHOPPING CENTER (BLOOMINGDALE SQUARE SHOPPING CENTER)

ADOPTED BY THE PRESIDENT AND
THE BOARD OF TRUSTEES OF THE
VILLAGE OF BLOOMINGDALE
THIS **27th** DAY OF **February**, 1989

Published in pamphlet form
by authority of the President
and Board of Trustees of the
Village of Bloomingdale, DuPage
County, Illinois this **27th** day of
**February**, 1989.

PREPARED BY: VILLAGE OF BLOOMINGDALE
201 SOUTH BLOOMINGDALE ROAD
BLOOMINGDALE, ILLINOIS, 60108

AMENDED, KNOWN AS 25W147 AND 25W125 WEST ARMY TRAIL ROAD FROM B-1 TO B-3, GENERAL SERVICE BUSINESS DISTRICT, PLANNED UNIT DEVELOPMENT, TO PERMIT THE CONSTRUCTION AND OPERATION OF A RETAIL SHOPPING CENTER (BLOOMINGDALE SQUARE SHOPPING CENTER)

WHEREAS, application has been made for the rezoning of the subject property commonly known as 25W147 and 25W125 West Army Trail Road and legally described in Exhibit A to this Ordinance and made a part hereof, from B-1 to B-3, General Service Business District, Planned Unit Development, in order to permit construction and operation of a retail shopping center; and

WHEREAS, the subject property is presently zoned B-1, unincorporated DuPage County; and

WHEREAS, the subject property is surrounded by retail/commercial (The Courtyard at Stratford and Amling's) on the north, vacant property on the south, retail/commercial (Bloomingdale Court) on the east and retail/commercial (Toys 'R' Us) on the west; and

WHEREAS, the property is suitable for the purpose for which it is to be zoned; and

WHEREAS, the applicant has requested certain deviations from B-3 zoning regulations to reduce the east and west side yards by five to eight feet and to allow parking and access drives within these minimum side yard areas and certain deviations from the Village of Bloomingdale Sign Ordinance to allow the construction of a 12-foot high, 10-foot wide and 100 square feet in area free-standing identification sign in lieu of the permitted 9-foot high, 7-foot wide and 63 square foot in area free-standing identification sign; and

WHEREAS, a public hearing has been held before the Plan Commission of the Village of Bloomingdale; and

WHEREAS, the Plan Commission has recommended the granting of the petition subject to certain terms and conditions, and has filed its recommendation and findings of fact with the

ILLINOIS, as follows:

SECTION ONE: That the property which is the subject of this Ordinance is legally described in Exhibit A which is attached hereto and made a part hereof.

SECTION TWO: That the subject property is hereby rezoned from B-1, unincorporated DuPage County, to B-3, General Service Business District, PUD, in order to permit the construction and operation of a 75,325 square foot retail shopping center consisting of an "L" shaped 70,825 square foot building and a 4,500 square foot outbuilding, subject to the terms and conditions hereinafter set forth in this Ordinance. The development of the property shall be in accordance with the following listed documents which were submitted to the Plan Commission and to the Village Board, and which are incorporated into this Ordinance as if fully set forth herein, and such modifications to said documents and further terms and conditions which are set forth in this Ordinance. Said documents and modifications thereto which development is subject are the following:

1. Application for Hearing, dated November 17, 1988, by J. Michael Spriggs and Eric J. Golting, First Western Development Corp. (Petitioner's Exhibit 1);

2. Notice of Public Hearing, dated November 20, 1988, by Barney F. Pelant, Chairman, Plan Commission (Petitioner's Exhibit 2);

3. Affidavit of Compliance, dated November 17, 1988, by J. Michael Spriggs and Eric J. Golting (Petitioner's Exhibit 3);

4. Application Agreement, dated September 20, 1988, by J. Michael Spriggs (Petitioner's Exhibit 4);

5. Affidavit of Disclosure, dated November 18, 1988, by Vernon and Evelyn Deeke (Petitioner's Exhibit 5);

6. Notice to Surrounding Property Owners (including certified return receipts), submitted December 6, 1988, by J. Michael Spriggs (Petitioner's Exhibit 6);

7. Material Sample Board, dated January 3, 1989, by Concepts West Architecture, Inc. (Petitioner's Exhibit 9);

8. Booklet of Project Exhibits, dated December 6, 1988, by First Western Development Corp. (Petitioner's Exhibit 10);

9. Revised Site Plan (Sheet SD-1), dated December 22, 1988, by Concepts West Architecture, Inc. (Petitioner's Exhibit 11);

Petitioner's Exhibit 13"; and

12. Tenant Sign Criteria, dated January 3, 1989, by First Western Development Corporation (Petitioner's Exhibit 14).

SECTION THREE: Development of the subject property is further subject to the following terms and conditions:

1. Proposed Use -- The not more than 75,325 square foot retail shopping center shall consist of an "L" shaped building, 70,825 square feet in area, and an outbuilding of 4,500 square feet in area. The outbuilding shall be located in the parking lot, south of Army Trail Road and west of the center access drive as shown on Petitioner's Exhibits 11 and 12. As proposed, the shopping center shall be anchored by an "F & M Drugs" store. A combination of retail and/or restaurant uses shall occupy the remainder of the center. Sit-down restaurants are a permitted use in the B-3 District and may be located anywhere in the center. However, drive-in restaurants are special uses and shall not be permitted as part of the rezoning.

2. Setbacks -- A deviation is hereby granted from B-3 zoning regulations to permit the reduction of the east and west side yards by five to eight feet and to allow parking and access drives within these minimum side yard areas. There shall be a ten-foot perimeter yard for landscaping on the east boundary consistent with criteria established by the Site Plan Review Ordinance. The seven-foot wide west perimeter yard abuts a 13-foot green space on the adjacent Toys 'R' Us site as shown on Petitioner's Exhibit 11.

3. Access and Circulation

    (a) Access to the site shall be provided by two new curb cuts along Army Trail Road and by an existing driveway on the adjacent Toys 'R' Us site in substantial conformance with Petitioner's Exhibits 10 and 11. The easternmost drive shall provide access to the service road behind the center. The drive shall be restricted to "right-in" and "right-out" vehicular movements only. A second drive, approximately 100 feet west of this service drive, shall be constructed as the center's main point of access. Petitioner shall construct a left turn lane on Army Trail Road to accommodate incoming westbound traffic. Outbound left turns shall be prohibited at this location;

    (b) There shall be a shared access point on Knollwood Drive, extended, between the center and Toys 'R' Us as per the reciprocal agreement negotiated between First Western Development Corporation and Toys 'R' Us. Village staff shall contact the DuPage County Highway Department to request traffic counts at this intersection, as recommended by petitioner's traffic engineer, Barton Aschman Associates, Inc., in order to determine whether a traffic control signal shall be installed at the intersection of Knollwood Drive, extended and Army Trail Road; and

    (c) Prior to the issuance of a building permit, petitioner shall provide written documentation that the DuPage County Highway Department has reviewed and approved plans for the proposed curb cuts and access improvements along Army Trail Road. If the County requires changes that substantially affect access to or circulation on the

foot wide walk along the front of the center. Sidewalks around the east and south sides of the outbuilding shall be eight feet wide, which shall include six feet of unobstructed walk for pedestrians on the east side of the outbuilding, where cars shall be parked perpendicular to the sidewalk.

5. Parking -- There shall be a total of not less than 432 parking spaces provided for the center. Required parking is based upon petitioner's proposal that 85 percent of the center (64,026 square feet, including the outbuilding) shall be developed for retail and that 15 percent of the center (11,299 square feet) shall be developed as restaurant(s). Approximately one-fourth of the total number of stalls shall be located at the rear of the center for employee and customer overflow parking. Parking stalls shall be 9' x 18', in accordance with the provisions of the draft Off-Street Parking Ordinance. Nine stalls, 16' x 18', shall be constructed for handicapped parking (see Petitioner's Exhibit 11). Ramps shall be provided at several locations along the front of the center to provide barrier-free access, and along the center's front facade where changes in grade shall occur.

6. Loading -- Six signed and striped 10' x 50' loading spaces shall be located along the rear (east and south elevations) of the center (see Petitioner's Exhibit 11). A 10' x 18' loading area shall be provided on the east side of the outbuilding to accommodate service vehicles and small delivery trucks.

7. Architecural Design -- The center shall be constructed at several levels in order to correspond to the changing grade of the property, which slopes significantly (nearly 24 feet) from the northeast to the southwest (see Petitioner's Exhibit 12). The front and side elevations of the building shall be constructed of a reddish-brown facebrick. Off-white, sand-finished dryvit panels and brick rowlocks shall be installed over each storefront for contrast and architectural interest (see Petitioner's Exhibit 9). A seven-to-eight-foot wide canopy, supported by brick piers, shall be constructed along the front elevations and around the outbuilding for pedestrian protection. Such canopy shall be extended along the south (rear) elevation of the outbuilding, visible from the parking lot, in order to create a storefront appearance (see Petitioner's Exhibit 12). Construction of the center shall include clear glass windows and doors, housed in dark bronze aluminium frames.

The rear elevations (south and east) shall be constructed of concrete block, colored to match the brick used for the center. The reddish-brown color shall either be stained or impregnated into the block to reduce maintenance that occurs from painting. Service doors and flashing shall be painted to match adjacent rear walls. Exposed gutters and downspouts, painted to match the building, shall be installed along the rear of the center. A 100-foot section of the east (rear) elevation of the north/south leg of the center, visible from Army Trail Road and the adjacent Bloomingdale Court, shall be constructed of brick and shall include windows to create a storefront appearance.

The architectural design, building materials and color styling of the outbuilding shall be the same as the remainder of the center. Internal downspouts shall be provided for roof drainage.

9. <u>Trash Enclosures/Utility Screens</u> -- Trash enclosures and utility screens shall be installed on the rear (south and east) elevations of the center and constructed of reddish-brown block (see Petitioner's Exhibit 12). Enclosures located on the south elevation of the outbuilding shall be constructed of the same brick used for the center. Metal-panel gates and protective steel bollards proposed for the trash enclosures shall be painted to match the color of the building. Concrete pads and aprons shall be constructed to provide support for dumpsters and refuse hauling vehicles.

10. <u>Lighting</u> -- Dark-bronze parking lot and wall-mounted light fixtures shall conform to design specifications established for Stratford. The height of the light standards, 32.5 feet and 42.5 feet, shall be consistent with those approved for adjacent developments. Metal halide bulbs shall be installed in cube-style luminaires. As per the photometric plan, uniform levels of light shall be provided on site.

11. <u>Signage</u>

    (a) <u>Free-Standing Identification Sign</u> -- A deviation is hereby granted from the Sign Ordinance to permit the construction of a free-standing identification sign, not to exceed 12 feet in height, as measured from the top of the adjacent curb along Army Trail Road, 10 feet in width and 100 square feet in area:

        (i) The base of the sign shall be constructed of the same brick as the center, and the color of the sign face shall match the off-white color of the sign frieze;

        (ii) In addition to the copy "Bloomingdale Square", no more than two tenant signs shall be installed on this sign; and

        (iii) There shall be no free-standing sign allowed for the outbuilding, unless such space is leased for restaurant use;

    (b) <u>Tenant Signage</u> -- Wall signs shall consist of individually applied and internally illuminated letters. Signs shall be horizontally and vertically centered on the sign frieze in order to assure uniformity in placement. Script and logos shall be permitted only if they are part of an established script or logo. Letter style and color of copy shall be selected by the tenant, subject to review and approval of First Western Development Corp. All letter returns and trim caps shall be bronze in color. Prior to the issuance of a building permit, petitioner shall prepare and submit revised drawings and tenant sign criteria to the Village Planner for review and approval which demonstrate that:

        (i) All tenant signage shall conform to the Sign Ordinance criteria, which permits wall signs to encompass five percent of the storefront facade, but not to exceed 100 square feet;

        (ii) Only one wall sign shall be permitted for each tenant. There shall be no corner signs on the east elevation and west wall of the "F & M Drugs" store; and

and Village Board at a public meeting; and

(c) <u>Other Signage</u> -- Signage for tenant entrance doors shall be limited to two-inch high gold leaf or decal letters showing the hours of business and emergency telephone numbers only. It shall not consist of advertising for respective tenants.

12. <u>Landscaping</u> -- Perimeter landscaping shall conform with Village ordinances, which require the installation of one tree for every forty lineal feet. Parking areas shall be landscaped with deciduous trees and groundcover, and foundation plantings shall be provided around the outbuilding and in front of the "F & M Drugs" store (see Petitioner's Exhibit 13). Hydroseed shall be installed in the rear yard and within the detention basin. Prior to the issuance of a building permit, petitioner shall submit all landscape specifications and details to the Village Planner for review and approval. Such specifications and details shall resolve all outstanding items pertaining to site landscaping outlined in Planning Resources' December 20, 1988 memorandum. Such items shall include, but are not limited to, the following:

(a) Front yard landscaping shall be modified to improve compatibility with the existing Army Trail Road Streetscape. A minimum of six flowering or evergreen trees shall be provided in the vicinity of the center access drive. These plantings shall be situated so as not to interfere with the line-of-sight for motorists exiting the site;

(b) To improve drainage for the proposed grass, the slope of the bottom of the detention basin shall be increased to two percent or more, or native grasses, that are tolerant of wet and dry conditions, shall be installed within the basin; and

(c) If it is determined that the retaining wall on the east side of the property line shall be constructed, petitioner shall install a landscape that requires less maintenance and poses fewer hazards than would result from cutting the lawn proposed on the terraced 3:1 slopes.

13. <u>Final Engineering</u> -- Prior to the issuance of a building permit, petitioner shall address all items concerning grading, drainage, and other related engineering items contained in review memoranda prepared by the Assistant Village Engineer and the Village Planner, dated December 5, 1988 and December 30, 1988, respectively.

14. <u>Approval</u> -- The approval of the rezoning of the subject property is granted upon the condition that the subject property be developed in accordance with the terms of this Ordinance. Upon failure of the petitioner to obtain building permits within one (1) year of the date of this Ordinance, approval of the rezoning of the subject property shall be automatically revoked, provided, however, that upon request in writing of petitioner prior to expiration of the one (1) year, the Board of Trustees may at any time or from time to time, by resolution duly adopted at any meeting of the Board of Trustees, extend the period of time for obtaining building permits.

After obtaining building permits, petitioner shall proceed with reasonable diligence to commence and complete development of the subject property.

this Ordinance shall constitute authorization for development of the subject property in accordance with the terms and conditions of this Ordinance and shall prevail against other ordinances of the Village to the extent that there might be any conflict. Except for the foregoing limitation, the development of the subject property is subject to all terms and conditions of applicable existing ordinances and regulations, and as they may be amended from time to time, of the Village of Bloomingdale, including, without limitation, zoning ordinances, building codes and subdivision regulations, and construction and designs for public improvements.

SECTION FIVE: Penalty. That any person violating the terms and conditions of this Ordinance shall be subject to a penalty of not to exceed Five Hundred Dollars ($500.00), with each and every day that the violation of the Ordinance is allowed to remain in effect being deemed a complete and separate offense. In addition, the appropriate authorities of the Village may take such other action as they deem proper to enforce the terms and conditions of this Ordinance, including, without limitation, an action in equity to compel compliance with its terms. That any person violating the terms of this Ordinance shall be subject, in addition to the foregoing penalties, to the payment of court costs and reasonable attorneys' fees.

SECTION SIX: That this Ordinance shall be in full force and effect from and after the passage, approval and publication in pamphlet form as provided by law, provided, however, that this Ordinance shall not take effect until a true and correct copy of this Ordinance is executed by the owners of the Subject Property or such other party in interest, consenting to and agreement to be bound by the terms and conditions contained within this Ordinance. Such execution shall take place within sixty (60) days after the

PASSED this 27th day of February, 1989.

AYES: Trustees Iden, Puccio, Carollo, Cropper, Behr, and Horvath
NAYS: NONE

ABSENT: NONE

APPROVED this 27th day of February, 1989.

ATTEST:

_____
Village President

_____
Village Clerk

I, __J. Michael Spriggs__, on behalf of Bloomingdale
J. Michael Spriggs, Authorized Agent of the
Managing General Partner    (Please Print).
Limited Partnership, being the owner or other party in interest of
the property legally described within this Ordinance, having read
a copy of the Ordinance, do hereby accept, concur and agree to
develop and use the subject property in accordance with the terms
of this Ordinance.

DATED: 4/3/89

_____
(Signature)

EXHIBIT "A"

LEGAL DESCRIPTION

## PARCEL ONE ("STARK" PROPERTY)

Lot 1 in Stark's Second Assessment Plat of Part of the South 1/2 of the North East 1/4 of Section 20, Township 40 North, Range 10, East of the Third Principal Meridian, according to the Plat thereof recorded September 22, 1955 as Document 774285, in DuPage County, Illinois

## PARCEL TWO (TRUST NO. 78-240)

The Westerly 462.29 feet (as measured along the center line of Army Trail Road and parallel with the West line of Stark's Second Assessment Plat) of that part of the East 1/2 of Section 20, Township 40 North, Range 10, East of the Third Principal Meridian, lying South of the Southerly line of Army Trail Road as dedicated by Document R79-28379, North of the Northerly line of the Illinois Central Railroad and East of the West line and the West line extended South of Stark's Second Assessment Plat recorded as Document 774285, (except that part thereof falling within Lot 1 of said Assessment Plat) in DuPage County, Illinois