# Exhibit 7

CHAPTER 10
PLANNED UNIT DEVELOPMENT DISTRICTS

ARTICLE A. BUSINESS PARK PLANNED UNIT DEVELOPMENT DISTRICT OF 75 TO 250 ACRES
SECTION:
11-10A-1: Purpose And Intent
11-10A-2: Uses
11-10A-3: Lot Size
11-10A-4: Yards
11-10A-5: Bulk Regulations
11-10A-6: Off Street Parking And Loading
11-10A-7: Signs
11-10A-8: Landscaping And Screening
11-10A-9: Building Construction And Design
11-10A-10: Special Provisions
11-10A-11: Procedure For Establishing District
11-10A-12: Application Of Provisions

11-10A-1: PURPOSE AND INTENT:
  A. A business park district shall be a planned unit development district by special use of seventy five (75) to two hundred fifty (250) acres ("business park district"). The business park district is intended to provide for a unified development of mixed uses, in a campuslike setting, which will promote and maintain desirable economic activities.
  B. A business park district, as a planned development, is of such a substantially different character from other planned developments that the public welfare requires that development within the business park district be treated in a different manner from other planned developments. (Ord. 87-29, 6-22-1987; amd. 2012 Code)
  C. The purpose of this article is to set forth specific standards and exceptions to govern the recommendations of the planning and zoning commission and the action of the board of trustees with respect to granting approvals for such districts and development therein. These regulations are designed to provide for an integrated development considering all the elements of good land planning so as to provide an adequate relationship between structures and land uses, while at the same time providing for adequate space, light, air, use and bulk limitations, and promoting the health, safety and welfare of the village and its residents. (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)
  D. A business park district is a tract of land between seventy five (75) and two hundred fifty (250) acres of contiguous property; provided, that properties separated by highways, streets, public ways or railroad or other public utility rights of way may be deemed to be contiguous for the purpose of qualifying as a business park district.
  E. After the establishment of a business park district in accordance with procedures set forth in this article, contiguous property of any size may be added to such business park district. All procedures required by this article for the establishment of a business park

district, or any other ordinance of the village which refers to or applies to the establishment of a business park district, shall be applicable to the addition of property to such business park district. (Ord. 87-29, 6-22-1987; amd. 2012 Code)

11-10A-2: USES:
  A. Permitted And Special Uses: The following permitted and special uses shall be allowed in the district:
    1. Permitted Uses:
Any municipal or governmental building or use;
Institutions of an educational, governmental, religious, philanthropic or fraternal nature;
Light industrial, assembly and laboratory facilities, as such uses relate to the production of products and parts, excluding, however, uses that require EPA or NPDES approval;
Professional and administrative offices (excluding medical and dental) and brokerages, but no goods or retail residential real estate may be offered for sale in the district unless accessory to a principal use located along a major arterial;
Recreational facilities including, but not limited to, golf courses, tennis courts and health clubs;
Technology and research centers, including medical and hospital research establishments; and
Wholesale establishments; storage and warehousing (excluding miniwarehouse facilities) in conjunction with an office use or wholesale establishment. Storage of fuel oil and gasoline shall be prohibited unless incidental to the on site operation and approved by the fire protection district. (Ord. 87-29, 6-22-1987)
    2. Special Uses: The following uses will be allowed within the district; provided, that:
      a. Each use shall be subject to review by the planning and zoning commission and approval by the village board in accordance with requirements contained in section 11-3-4 of this title. (Note: Requires a public hearing.):
        (1) Permitted and special uses listed in districts B-1, B-2 and B-3, chapter 8, articles B, C and D of this title; provided, that:
          (A) The uses do not fall within those uses identified in subsection A1 of this section; and
          (B) The uses are located along a major arterial.
        (2) Hotels or motels.
        (3) Multiple-family residential.
        (4) Firearms practice facility, indoor, in accordance with the following terms and conditions:
          (A) It is required that all shooters must complete an orientation safety program or show a valid firearm owners identification (FOID) card, before they are allowed to discharge firearms.
          (B) There shall be remote monitoring of air filtration device at regular intervals.
          (C) No more than one person shall use a shooting lane at any one time.
          (D) The amount and location of ammunition intended for use at the range shall comply with the requirements of the Bloomingdale fire protection district.

(E) There shall be either remote or on site real time monitoring of security cameras at all times.

(F) The firearms practice facility shall be required to obtain a business license that shall include a criminal background check of owners and managers, and other employees as deemed necessary by the village board.

(G) The firearms practice facility is required to provide parking for its customers on site. If parking demand exceeds the supply, the facility shall reduce the number of lanes that can be occupied for shooting, or otherwise reduce customer demand for the facility so that parking can be contained on site.

(H) All shooting ranges shall provide ceiling and in-wall sound barriers to prevent sound in excess of fifty five (55) db at the property line of the subject property, and at zero db at any property line of a residential district.

(I) Complaints regarding noise, odors, and traffic congestion resulting from the firearms practice facility shall be directed to the planning and zoning commission at a public hearing for a recommendation to the village board of trustees.

(J) The shooting range must comply with all village, state of Illinois, and federal laws and regulations. Where the foregoing requirements conflict with any other local, state, and federal requirements, the more restrictive shall apply.

(5) Medical cannabis cultivation and dispensing centers, subject to the following:

(A) Compliance with the Compassionate Use of Medical Cannabis Pilot Program Act ("Act"), also known as Illinois Public Act 098-0122;

(B) Submission and performance requirements in addition to those set forth in chapter 4, "Site Development And Plan Review", of this title and other performance requirements in district regulations:

(i) Floor Plan: At minimum a concept floor plan indicating principal function areas, to include where nonpatients will be permitted, private consulting areas, storage areas, and retail areas.

(ii) Disposal Plan: A plan for disposal of any medical cannabis or byproducts that are not sold to a patient or primary caregiver in a manner that protects any portion thereof from being possessed or ingested by any person or animal and shall abide by applicable State or local regulations.

(iii) Ventilation Plan: A plan for ventilation of the medical cannabis business that describes the ventilation systems that will be used to prevent any odor of medical cannabis off the premises of the business. For cultivation centers, such plan shall also include all ventilation systems used to control the environment for the plants and describe how such systems operate with the systems preventing any odor leaving the premises.

(iv) Security Plan: A security plan for the medical cannabis business that includes facility access controls, surveillance systems, on site security personnel, and other security measures required by State or local regulations.

(v) Exterior Appearance: Elevations of the exterior appearance of the building of a cultivation center or dispensary demonstrating compatibility with commercial structures already constructed or under construction within the immediate neighborhood, to ensure against blight, deterioration, or substantial diminishment or impairment of property values in the vicinity.

(vi) Entrance And Means Of Egress: Plans shall depict more than one means of egress from the interior so as to meet Building Codes and public safety concerns; however, it shall have a single secure public entrance and shall implement appropriate security measures to deter and prevent the theft of medical cannabis and unauthorized entrance into areas containing cannabis. The dispensary entrance shall be located and maintained clear of any barriers, landscaping and similar obstructions that may block the view so that the entrance and pedestrian access is clearly visible from the public street, sidewalk and parking area.

(vii) Cannabis Paraphernalia And Product Display At Dispensaries: No retail sales of cannabis paraphernalia are permitted except as permitted by law to qualifying patients and/or designated caregivers. No medical cannabis or paraphernalia shall be displayed or kept in a dispensary so as to be visible from outside the premises.

(viii) On Site Use Prohibited: No cannabis shall be smoked, eaten or otherwise consumed or ingested within the medical cannabis business.

    b. Each use shall comply with the lot size, yard and bulk requirements of their respective zoning classifications. (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014; Ord. 2015-03, 1-12-2015)

  B. Accessory Uses: All accessory uses shall be permitted in accordance with the regulations contained in section 11-5-9 of this title. (Ord. 87-29, 6-22-1987)

  C. Temporary Uses: Temporary structures for construction purposes shall be permitted on an individual lot in accordance with a construction schedule to be submitted by the developer and approved by the Village Engineer. (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)

11-10A-3: LOT SIZE:

A separate ground area, or zoning lot, shall be designated for each structure containing a permitted use or special use in accordance with the following:

  A. Minimum lot area: Two (2) acres.

  B. Minimum lot width, as measured at the front building setback line: Two hundred feet (200'). (Ord. 87-29, 6-22-1987)

11-10A-4: YARDS:

  A. Minimum Front Yard:

    1. All structures fronting on streets which form the boundary of the district shall maintain a minimum setback of fifty feet (50') from the front lot line, with the exception of Lake Street, Gary Avenue and Bloomingdale, Schick, Army Trail and Schmale Roads. On lots that abut Lake Street, Gary Avenue and Bloomingdale, Schick, Army Trail and Schmale Roads, all structures shall maintain a minimum setback of seventy five feet (75') from a front lot line;

    2. Structures that front on streets that are internal to the district shall be set back thirty five feet (35') from the front lot line;

    3. Landscaping within a front yard shall be in accordance with the requirements contained in this subsection A3 and section 11-10A-8 of this article. Means of ingress and egress, signs and obstructions permitted in section 11-10A-7 of this article and chapters 13 and 14 of this title shall be permitted in the front yard.

    a. Lots Fronting On Streets Outside District:

    (1) The first thirty feet (30') of the front yard of all lots fronting on streets forming the boundary of the district, as measured from the front lot line, shall be sodded or seeded and landscaped; and

    (2) No parking or roads shall be permitted within the first thirty feet (30') of the front yard;

    b. Lots Fronting On Streets Within District:

    (1) The first thirty five feet (35') of the front yard of all lots fronting on interior streets within the district, as measured from the edge of the pavement, shall be sodded or seeded and landscaped;

    (2) No parking or roads shall be permitted within the first thirty five feet (35') of the front yard;

    (3) A five foot (5') wide sidewalk may be installed within the required thirty five foot (35') landscaped area in accordance with subsection 11-10A-10E of this article; and

    4. Loading berths shall not be permitted in the front yard of any lot within this district, unless enclosed.

  B. Minimum Corner Side Yard:

    1. All structures shall maintain a minimum setback of fifty feet (50') from the corner side lot line along streets which form the boundary of the district, with the exception of lots that abut Lake Street, Gary Avenue and Bloomingdale, Schick, Army Trail and Schmale Roads. On lots that abut Lake Street, Gary Avenue and Bloomingdale, Schick, Army Trail and Schmale Roads, structures shall maintain a minimum setback of seventy five feet (75') from a corner side lot line;

    2. On lots that are interior to the business park and do not abut a boundary line of the district, structures may be set back thirty five feet (35') from the corner side lot line;

    3. Landscaping within a corner side yard shall be in accordance with the requirements contained in this subsection B3 and section 11-10A-8 of this article. Means of ingress and egress, signs and obstructions permitted in section 11-10A-7 of this article and chapters 13 and 14 of this title shall be permitted in the corner side yard.

    a. Lots Abutting Streets Outside District:

    (1) The first thirty feet (30') of the corner side yard of all lots that abut streets forming the boundary of the district, as measured from the corner side lot line, shall be sodded or seeded and landscaped; and

    (2) No parking or roads shall be permitted within the first thirty feet (30') of the corner side yard;

    b. Lots Abutting Streets Within District:

    (1) The first thirty five feet (35') of the corner side yard of all lots which abut interior streets, as measured from the edge of the pavement, shall be sodded or seeded and landscaped;

    (2) No parking, roads or loading berths shall be permitted within the first thirty five feet (35') of the corner side yard;

    (3) A five foot (5') wide sidewalk may be installed within the required thirty five foot (35') landscaped area in accordance with subsection 11-10A-10E of this article; and

    4. No parking, loading berths or access roads shall be permitted in the first thirty feet (30') of the minimum corner side yard.

  C. Minimum Interior Side Yard:

    1. All structures shall be set back from the side lot line a distance of not less than twenty five feet (25'), plus one additional foot for each two feet (2') of building height above thirty five feet (35');

    2. Parking, loading berths and access roads shall be prohibited from the first twenty five feet (25') along an interior side lot line that extends from the front property line to the rear facade of a building; and

    3. Parking, loading berths and access roads shall be permitted no closer than ten feet (10') to an interior side lot line that extends from the rear facade of a building to the rear lot line.

  D. Minimum Rear Yard:

    1. All structures shall maintain a minimum setback of fifty feet (50') from a rear lot line which forms the boundary of the district, with the exception of lots that abut Lake Street, Gary Avenue and Bloomingdale, Schick, Army Trail and Schmale Roads. On lots that abut Lake Street, Gary Avenue and Bloomingdale, Schick, Army Trail and Schmale Roads, all structures shall maintain a minimum setback of seventy five feet (75') from a rear lot line;

    2. On lots that are interior to the business park and do not abut a boundary line of the district, structures may be set back a minimum of twenty feet (20') from a rear lot line; provided, that they are set back one additional foot for each two feet (2') of building height above thirty five feet (35');

    3. Pavement for parking, loading berths and access roads shall be permitted no closer than ten feet (10') to an interior rear lot line; and

    4. Parking, loading berths and access roads shall be set back a minimum of fifty feet (50') from a rear lot line which forms the boundary line of the district.

  E. Transition Yards: All structures in the district shall be set back a minimum of seventy five feet (75') from a side or rear lot line which abuts or is across the street from a front, side or rear lot line in a residential district. (Ord. 87-29, 6-22-1987)

11-10A-5: BULK REGULATIONS:

  A. Maximum Structure Height:

    1. No building or structure shall exceed one hundred feet (100') in height;

    2. All buildings or structures shall adhere to the following height restrictions: (Note: For purposes of determining allowable height, the number of feet from a residential district is measured from the residential lot line, and is inclusive of streets and rights of way.)

      a. Thirty five feet (35'), when located within one hundred fifty feet (150') of any residential district;

      b. Fifty feet (50'), when located a distance between one hundred fifty (150) and three hundred feet (300') from any residential district;

      c. Any building or structure that is located more than three hundred feet (300') from a residential district may be erected above fifty feet (50') in height if set back an additional

one foot (1') for each two feet (2') in height that exceeds fifty feet (50'); and (Ord. 87-29, 6-22-1987)

    d. Any building or structure that exceeds sixty feet (60') in height shall be subject to review and approval by the planning and zoning commission and village board in accordance with procedures set forth in subsection 11-10A-11H of this article. (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

  B. Maximum Lot Coverage: The maximum coverage of any lot within this district (for permitted uses listed in subsection 11-10A-2A of this article) by buildings, parking, roads, or any other impervious surface shall not exceed seventy five percent (75%). (Ord. 87-29, 6-22-1987)

11-10A-6: OFF STREET PARKING AND LOADING:

  A. Off street parking shall be provided in accordance with requirements contained in chapter 13 of this title; and (Ord. 87-29, 6-22-1987)

  B. All unenclosed loading facilities shall be provided in accordance with requirements contained in chapter 13 of this title, and shall be subject to review and approval by the Planning and Zoning Commission and Village Board in accordance with procedures set forth in subsection 11-10A-11H of this article; and (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

  C. No parking facility or loading berth shall be closer than fifty feet (50') to any lot line that is adjacent to a residential property line; and

  D. Development of all lots shall include six inch (6") curbing along the perimeter of all parking lots, access roads and unenclosed loading berths. (Ord. 87-29, 6-22-1987)

11-10A-7: SIGNS:

  A. Unless otherwise approved by ordinance subsequent to the date of approval of the Business Park District (ordinance 87-29, passed June 22, 1987), signage shall be provided in accordance with requirements contained in chapter 14 of this title for office use; and (Ord. 87-29, 6-22-1987; amd. 2012 Code)

  B. All signs shall fit into a uniform design framework which includes compatibility of structure, materials, color palette and method of illumination. (Ord. 87-29, 6-22-1987)

11-10A-8: LANDSCAPING AND SCREENING:

The applicant shall submit six (6) copies of the final landscape plan prepared for each lot for review and approval by the Village Planner and Village Engineer. Landscaping shall be designed to coordinate the appearance of the varying design elements within the Business Park District, and shall be in accordance with the following: (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)

  A. Preservation Of Natural Features:

    1. An evaluation of each building site shall be made to determine whether desirable tree stands, ponds, or other existing natural features can be preserved and included in the landscape plan; and (Ord. 87-29, 6-22-1987; amd. 2012 Code)

   2. Existing trees shall be preserved, wherever possible, in accordance with a tree preservation plan, subject to review and approval by the Village Engineer and Village Planner. (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)

  B. Front And Corner Side Yards:

   1. The front and corner side yards of all lots shall be landscaped in accordance with subsections 11-10A-4A and B of this article and requirements of this subsection;

   2. At a minimum, landscaping in the front and corner side yards shall include the installation of evergreen, deciduous, or ornamental trees averaging thirty feet (30') on center (as measured per linear foot of frontage) and planted in naturalistic groupings; and

   3. Landscaped berms and/or evergreen plantings shall be provided in the front and corner side yards in accordance with criteria set forth in subsections B2 and E of this section in order to minimize the visual effect of large paved areas and standing automobiles.

  C. Interior Side Yards:

   1. Landscaping shall also be required within the minimum interior side yard of each lot.

   2. At a minimum, landscaping in the interior side yard shall include the installation of evergreen, deciduous, or ornamental trees averaging eighty feet (80') on center (as measured per linear foot along the side lot line), and alternately spaced with the existing or proposed trees within an interior side or rear yard of an adjoining parcel.

   3. When loading facilities are located in an interior side yard and are visible from an adjacent developed property or public right-of-way, landscaped berms or evergreen plantings shall be provided in accordance with criteria set forth in subsection E of this section to screen loading activities from public view.

  D. Interior Rear Yard:

   1. At a minimum, interior rear yards shall be seeded or sodded and landscaped with evergreen, deciduous or ornamental trees averaging eighty feet (80') on center (as measured per linear foot along the rear lot line); and

   2. Trees shall be alternately spaced with the existing or proposed trees within an interior rear or side yard of an adjoining parcel.

  E. Screening:

   1. a. Screening shall be provided when off street parking and/or unenclosed loading facilities are adjacent to a major arterial, adjacent to or across from residential or institutional land uses, or between commercial and office/industrial land uses;

    b. Such screening may be accomplished through the provision of landscaped berms, a compact hedge, fence, or wall, or a combination of any of these methods;

    c. Required screening shall be at least five feet (5') high;

    d. The placement of the screen around the parking or loading facility shall not impair the safety of pedestrian or vehicular traffic;

   2. Tree and shrub buffers, not less than fifty feet (50') in depth, shall be developed along all lot lines that are adjacent to or across the street from residential and institutional uses. At a minimum, trees planted within this buffer yard shall include:

    a. Deciduous: Three (3) per one hundred (100) linear feet;

    b. Evergreen: Five (5) per one hundred (100) linear feet; and

  c. Flowering: Five (5) per one hundred (100) linear feet.
 F. Streets And Rights-Of-Way:
  1. To create "gateways" into the business park, landscaping adjacent to the rights-of-way at intersections into the district shall be accented with denser and more mature plantings than required by other sections of this article, and shall include the installation of evergreen and flowering trees and shrubs; and
  2. Plants shall be arranged and maintained to provide for proper sightlines at intersecting streets.
 G. Interior Parking Lot Landscaping:
  1. A minimum of ten percent (10%) of any unenclosed parking facility shall be provided with interior landscaping to create visual relief and break (soften) the expanse of paving (note: foundation plantings adjacent to the parking lot shall be included in this calculation);
  2. All parking lot landscaping shall be curbed to prevent destruction of the landscaping by vehicles;
  3. The design of interior parking lot landscaping shall accommodate pedestrian traffic or shall be located away from anticipated pedestrian paths to avoid potential maintenance problems;
  4. Interior parking lot landscaping shall include, at a minimum, one deciduous street tree for each ten (10) parking spaces (note: trees used in landscaping required yards shall count toward this calculation, provided the parking lot adjoins these buffer yards);
  5. Parking lot islands and median strips shall be mounded, for improved drainage, with slopes not to exceed four to one (4:1); and
  6. An area between two feet (2') and five feet (5') aboveground shall be kept clear of plant growth, except for tree trunks, in order to assure that pedestrians and automobiles will be visible to the motorist.
 H. Recommended Plant Materials:
  1. Trees and shrubs shall be selected from the recommended species list attached to ordinance 87-29 as exhibit A, or other species as approved by the Village Planner. (Ord. 87-29, 6-22-1987)
  2. Unless otherwise approved by the Village Engineer or the Village Planner, the minimum size of trees, when installed, shall be as follows: (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)
   a. Deciduous: Three inch (3") caliper;
   b. Evergreen: Six feet (6') high; and
   c. Flowering: Six feet (6') high.
  3. Once the minimum landscape requirements have been met, any size tree may be installed on a lot to supplement minimum requirements.
 I. Berming: Berming used for landscaping and/or screening purposes shall be in accordance with the following:
  1. Mounding shall be located between the right-of-way and the building setback lines;
  2. Earth mounding shall generally vary in height, width, and length to create a free form, naturalistic effect; and

   3. The height of berms shall range between three feet (3') and four feet (4') in front yards along major arterials, and between four feet (4') and seven feet (7') adjacent to residential districts; slopes of berms shall not exceed a three to one (3:1) ratio.
   J. Maintenance:
   1. All landscaping shall be maintained in a healthy growing condition, neat and orderly in appearance, and free of refuse and debris; and
   2. All dead plant materials shall be removed and replaced as required in order to maintain an attractive landscape at all times. (Ord. 87-29, 6-22-1987)

11-10A-9: BUILDING CONSTRUCTION AND DESIGN:
   A. Materials: Buildings shall be constructed of masonry brick, stone, or block (excluding plain concrete block), architectural steel and glass, or precast concrete panels; (Ord. 87-29, 6-22-1987)
   B. Compatible Design: Design of all buildings shall be compatible in form, textures and colors, consistent with a campuslike setting, and shall be approved by the Village Planner and Building Commissioner, whose approval shall not be unreasonably withheld; (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)
   C. Planned Unit Developments Near Residence Districts: Where a rear or side elevation of a structure is adjacent to or across the street from a residential district, the facade shall be articulated through architectural design, change in building materials, use of berms and/or landscaping in order to avoid the monotonous view of a flat, linear and unbroken facade.
   D. Screening:
   1. All rooftop mechanical equipment shall be effectively screened from public view by the roof structure or a parapet wall;
   2. All meters and other mechanical equipment located on the exterior wall of a building shall be effectively screened from public view by landscaping or architectural elements; and
   3. Exposed exterior downspouts shall be prohibited. (Ord. 87-29, 6-22-1987)

11-10A-10: SPECIAL PROVISIONS:
   A. Performance Standards: All uses within the district shall comply with the performance standards contained in section 11-9-7 of this title.
   B. Outdoor Storage:
   1. All outdoor storage facilities shall be located adjacent to a railroad right-of-way;
   2. All outdoor storage facilities and trash receptacles shall be enclosed by a fence, wall, and/or landscaping not less than five feet (5') high, and shall be screened from view of adjacent residential or institutional properties and public rights-of-way; and
   3. No materials or wastes shall be deposited or stored on any lot in a district so that they may be transferred off the property by natural causes or forces.
   C. Outdoor Sales: All outdoor sales space shall be provided with a permanent, durable and dustless surface, graded and drained to dispose of all surface water.
   D. Streets And Public Rights-Of-Way:

    1. All new streets constructed within the district shall be curvilinear, designed to fit the terrain and protect existing vegetation; and (Ord. 87-29, 6-22-1987)

    2. Proposed rights-of-way, street widths and specifications for pavement shall require approval of the Village Engineer. (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)

  E. Sidewalks:

    1. Five foot (5') wide sidewalks shall be provided within the rights-of-way one foot (1') off the property line of major arterials that abut the boundary line of a district; construction standards for sidewalks shall be in accordance with the Village subdivision regulations and construction and design standards for public improvements; and

    2. An integrated pedestrian system shall be provided within the district which links all development parcels to one another and to external systems.

  F. Lighting:

    1. The developer of a district shall be responsible for selecting and implementing a unified system of lighting in the district;

    2. Any lighting used to illuminate an unenclosed off street parking and/or loading area, pedestrianway, sign or structure shall be located and/or shielded to avoid glare and excessive light spillage upon adjacent residential properties or public rights-of-way;

    3. Illumination levels shall not exceed 0.5 foot-candle beyond the boundary lines of the district;

    4. The average maintained foot-candle within a parking facility shall not be less than 1.0 nor greater than 3.0, and the maximum to minimum ratio shall not exceed eight to one (8:1); and

    5. Lights used to illuminate the facade of a building shall be located and directed so as to avoid glare or excessive light spillage upon adjacent properties and public rights-of-way.

  G. Drainage:

    1. No land shall be developed and no use shall be permitted that results in water runoff causing flooding, erosion or deposit of minerals on adjacent properties;

    2. Such runoff shall be properly channeled into a storm drain, watercourse, ponding area or other public facilities in accordance with title 10, chapter 12 of this Code and any other applicable Village ordinances or agreements pertaining to stormwater runoff; and (Ord. 87-29, 6-22-1987)

    3. Any change in grade affecting water runoff onto adjacent properties must be as approved by the Village Engineer. (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)

  H. Preservation Of Natural Features:

    1. Existing upland vegetation, wetlands, surface waters, and other natural features shall be preserved to the maximum extent possible in order to maintain important natural functions such as groundwater recharge, flood storage/desynchronization, sediment trapping, nutrient retention, erosion control, and wildlife habitat; and

    2. The applicant shall incorporate such natural features into required buffer yards, using them as visual screens, where possible, or capitalize upon existing wetlands and

stands of trees to frame views of buildings from the public rights-of- way; and (Ord. 87-29, 6-22-1987)

3. Wetlands or other natural features which cannot be preserved shall be replaced on site, with due regard for their functional values, in accordance with requirements of the U.S. Army Corps of Engineers. Proposals for replacement of wetlands or other significant natural features shall be subject to review by the Village Engineer and the Village Planner, whose approval shall not be unreasonably withheld. (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)

11-10A-11: PROCEDURE FOR ESTABLISHING DISTRICT:

A. Application:

1. Application for a Business Park District may be made by the owner or contract purchaser by filing an application for a zoning amendment with the Village Clerk in accordance with requirements of section 11-3-5 of this title;

2. At the time the application is filed, the developer shall also submit plans, data, and other information as required by subsection C of this section; (Ord. 87-29, 6-22-1987)

3. Copies of the application and submittals shall be forwarded to the Planning and Zoning Commission with the request to hold a public hearing; and (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

4. The applicant shall give notice of the public hearing in accordance with procedures outlined in subsection 11-3-5C of this title. (Ord. 87-29, 6-22-1987)

B. Public Hearing:

1. Upon receipt of the application and other required submittals, the Planning and Zoning Commission shall hold a public hearing on the proposed amendment, which shall be continued at least once; and

2. The Planning and Zoning Commission may continue the hearing from time to time without publication of additional notices. (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

C. Concept Plan; Submittals: At the time of the application, the developer shall submit thirteen (13) copies of the following materials, each folded to an eight and one-half inch by fourteen inch (81/2" x 14") size, with the title block clearly displayed:

1. A location map, which illustrates the relationship of the property to surrounding land uses;

2. A plat of survey prepared by a registered surveyor, including a legal description of the subject property to be included in the district;

3. A Concept Land Use Plan, presented in a general schematic fashion, which includes the following:

   a. Proposed land uses and existing uses within one hundred feet (100') of the district;

   b. Natural features on the subject property and within one hundred feet (100') of the district, including topography, floodplains, wetlands and existing vegetation;

   c. Pattern of public and private roads, including rights-of- way, and intended design standards;

   d. Size, area and location of lots;

 e. Dimensioned setbacks, easements and minimum yards;
 f. Description of the anticipated use, type, and location of structures;
 g. Location, type and size of landscaping;
 h. Proposed open space and/or stormwater detention/retention facilities;
 4. Architectural drawings and sketches illustrating the design and character of proposed structures;
 5. Concept landscape plan for the district, prepared by a landscape architect, identifying existing vegetation that will be preserved and showing proposed treatment of major entryways, rights-of-way, and perimeter buffers;
 6. Concept plan for signage, including proposed materials, color scheme and method of illumination;
 7. Details on lighting, including height, type of luminaire, and method of illumination;
 8. Illustrative site plans, showing typical building footprints, off street parking and loading areas, pedestrianways and landscaping, including typical screening of parking and loading facilities, outdoor storage areas, or screening from adjacent residential properties, as appropriate, for the following situations:
  a. Development of an interior lot;
  b. Transition between two (2) different land uses, if applicable;
  c. Buffering of a lot which is adjacent to a residential district;
  d. Development of a lot which fronts on a major arterial; and
  e. Development of a lot on a corner and/or cul-de-sac;
 9. A preliminary engineering study, including the following:
  a. A general description of and location map showing existing sanitary, stormwater and potable water facilities within and adjacent to the proposed district; and
  b. Proposed improvements necessary to properly handle the potable water, sanitary sewer, stormwater drainage and other service needs upon development of the district;
 10. A market analysis of proposed commercial uses, if any;
 11. A preliminary traffic study providing a general description of existing roads on and adjacent to the proposed district and the proposed road improvements necessary to properly handle the traffic anticipated to be generated upon development of the district;
 12. The relationship of the proposed district to existing land uses in the surrounding area and the Village Comprehensive Plan, including a statement of the effect on surrounding land uses;
 13. A description of the modifications and exceptions from this title, if any, or from the Village subdivision control ordinance, if any, which are being requested as part of the application for the establishment of a district;
 14. A development plan, showing proposed phasing of the project and estimated time of completion for each phase; and (Ord. 87-29, 6-22-1987)
 15. Prior to final plat approval, the developer shall submit declarations of covenants, conditions and restrictions and a maintenance plan for the proposed district. Said documents shall be subject to review and approval by the Village Attorney, Village Engineer and Village Planner. (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)
 D. Concept Plan Approval:

1. Planning And Zoning Commission Action:

   a. After the concept plan submittals have been presented and reviewed during the public hearing, the Planning and Zoning Commission shall submit its recommendation with respect to the application to the village board of trustees. A recommendation shall require a concurring vote of a majority of those members present, with a minimum of four (4) concurring votes. The planning and zoning commission may recommend: (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

      (1) Approval of the application, including any, all or none of the modifications to this title or the village subdivision control ordinance requested by the applicant, if any;

      (2) Approval of the application, with conditions, or changes or revisions to the plans; or

      (3) Disapproval of the application; (Ord. 87-29, 6-22-1987)

   b. Any recommendation by the planning and zoning commission for the grant of any, all or none of the modifications to this title or the village subdivision control ordinance requested by the applicant, or any recommendation by the planning and zoning commission that conditions, changes or revisions to the concept plan submittals be required, shall be based on findings of fact that said modifications to this title or the village subdivision control ordinance, and/or conditions, changes or revisions to the concept plan submittals are the following: (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

      (1) Necessary in the interest and needs of the community and in keeping with the intent of this title;

      (2) Necessary or desirable and appropriate with respect to the primary purpose of the district;

      (3) Will not be injurious to the use and enjoyment of other property in the immediate vicinity, nor substantially diminish and/or impair property values within the surrounding neighborhood, and are in accordance with good planning standards; and

      (4) Will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare; (Ord. 87-29, 6-22-1987)

   c. The planning and zoning commission shall set forth the reasons for its recommendation in a statement of findings of fact and recommendations, which shall be forwarded to the village board within forty five (45) days after the close of the hearing as follows: (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

      (1) Any requested exceptions or modifications from this title or from the village subdivision control ordinance shall be set forth in the statement of findings of fact and recommendations; (Ord. 87-29, 6-22-1987)

      (2) In the event of a favorable recommendation, the planning and zoning commission shall specify particular conditions to be incorporated into an approval of the application, which may or may not include requested exceptions or modifications from this title;

2. Board Of Trustees Action: Within sixty (60) days after receipt of the planning and zoning commission recommendation, the board of trustees shall either approve, approve with conditions, disapprove or send the application back to the developer and the planning and zoning commission for modification and review in accordance with the following: (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

    a. An approval with conditions shall state what additions or deletions from the application as submitted shall be made in the application as approved; and

    b. Any exceptions or modifications from this title or the village subdivision control ordinance that are granted by the village board of trustees must be clearly stated and identified as part of the approval.

  E. Preparation Of Development Ordinance:

    1. Upon review and approval of the concept plans by the village board, the village attorney shall prepare a development ordinance granting the business park district planned unit development for seventy five (75) to two hundred fifty (250) acres classification to the property for adoption by the village board. Said development ordinance and the business park ordinance (unless specific provision[s] thereof have been modified in the development ordinance) shall control development of the property. This ordinance shall contain:

    a. A list of exhibits which document the approved development plan; and

    b. A list of exceptions or modifications from the business park ordinance and any restrictions and conditions imposed by the Board of Trustees;

    2. After adoption of the development ordinance by the Board of Trustees, said ordinance shall not take effect unless the development ordinance shall be signed by the owners of the property in a district within sixty (60) days thereafter, assuring the Village that the development will be carried out in full compliance with the concept plans and within the time frame established by the development plan or as otherwise agreed to by the owners and the Village.

  F. Final Plat Of Subdivision: Based upon the approved plan, the developer shall submit a final plat of subdivision in accordance with the process set forth in the Village subdivision regulations.

  G. Final Site Plan Approval For Individual Lots:

    1. All lots within the district shall be developed according to the approved concept plans, development ordinance, and all regulations and restrictions contained in the business park ordinance.

    2. Prior to the issuance of a building permit, the owner of a particular lot or tract within the district shall submit six (6) copies of the final site plan, at a scale not less than one inch equals fifty feet (1" = 50'), to Village staff for review and approval. The following information shall be submitted in association with the site plan:

    a. Site information, including:

      (1) Name and address of the owner, applicant, planner, architect, engineer and landscape architect;

      (2) Date, scale, and north arrow;

      (3) Total acreage;

      (4) Title by which the property or project is to be referred; and

      (5) Proof of ownership.

    b. A plat of survey of the lot for which approval is being sought, including a legal description of the subject lot or tract or, where a subdivision is being sought, a plat of the subdivision.

 c. Overall development plan showing the relation of the particular site to the approved concept plans and existing developed lots.
 d. Location and size of all structures, both existing and proposed.
 e. Ground elevations of the parcel.
 f. Location of floodplain areas, wetlands and existing vegetation. (Ord. 87-29, 6-22-1987)
 g. Soil analysis, if required by the Village Engineer. (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)
 h. Dimensions of all minimum yards and spaces between structures.
 i. Location and dimensions of all fences and walls.
 j. A landscape plan, prepared by a landscape architect.
 k. Vehicular, pedestrian and service access, including:
  (1) The width of the access drive.
  (2) Identification and location of existing and proposed curb lines, property lines, sidewalks, and streets or drives.
  (3) Identification and location of existing and proposed parking regulations and signs, traffic signals, utility poles, light standards and fire hydrants.
 l. Off street parking and loading facilities, including numbers of spaces, dimensions of stalls and berths, and provision for screening such facilities, if required.
 m. Architectural elevations, including final architectural and building plans, depicting the buildings for which final approval is being sought.
 n. Details on signage, including location, height, width, area, colors, and method of illumination.
 o. Details on proposed lighting, including locations, size, height and method of illumination, including a point by point illumination plan, showing foot-candle intensities.
 p. Outdoor storage areas, if any.
 q. Waste disposal facilities, trash bins, and provision for screening such facilities and trash bins.
 r. Preliminary engineering, drainage and grading plans. (Ord. 87-29, 6-22-1987) Final engineering plans shall be submitted and approved by the Village Engineer prior to the issuance of a building permit. (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)
 3. During final plan review of any plans which do not require site plan review by the Planning and Zoning Commission and Village Board, Village staff shall report to the Planning and Zoning Commission and Village Board on a regular and continuing basis, at public meetings, concerning proposed projects and buildings and the progress of development.

 H. Site Plan Review By Planning And Zoning Commission And Village Board: If, during final plan review, or review of plans which are submitted in accordance with requirements of other sections of this title, Village staff determines that plans submitted for a particular lot are inconsistent with the development ordinance (including conditions contained therein, if any), the approved concept plans, or the requirements of this title, then plans

shall be subject to review and approval by the Planning and Zoning Commission and Village Board in accordance with the following procedures:

1. The applicant shall submit to the Planning and Zoning Commission and Village Board all plans and information listed in subsection G2 of this section;

2. a. The request for final approval shall be considered by the Planning and Zoning Commission at a regular or special meeting; no public hearing shall be required; (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

   b. However, any requested exception to, or modification from, bulk regulations for a perimeter lot which abuts the boundary line of a district, or changes to the approved buffer yard, shall require written notification by the owner or contract purchaser of all property owners within five hundred feet (500') of said perimeter lot;

   c. Said notice shall state the time, place, and purpose of such meeting; shall be sent by certified mail with return receipt requested, not less than fifteen (15) days in advance of the public meeting; and shall be properly addressed as shown on the Tax Assessor's rolls; and (Ord. 87-29, 6-22-1987)

   d. The owner or contract purchaser shall file with the Village Engineer a sworn affidavit, which shall include a copy of the notice and names and addresses of all persons to which said notice was sent; said affidavit shall be accepted as verification of required notification of the public meeting; (Ord. 87-29, 6-22-1987; amd. 2012 Code; Ord. 2017-42, 11-13-2017)

3. a. After reviewing the plans, materials and testimony presented during the public meeting, the Planning and Zoning Commission may recommend: (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

   (1) Approval of the application;

   (2) Approval of the application with conditions; or

   (3) Disapproval of the application; (Ord. 87-29, 6-22-1987)

   b. The Planning and Zoning Commission may recommend, or the Village Board may require, changes or revisions to the plans as are deemed necessary in the interest and needs of the community, provided they are in keeping with the intent of this title, and in accordance with good planning standards;

   c. (1) The Planning and Zoning Commission shall set forth the reasons for its recommendation in the statement of findings of fact and recommendations which shall be forwarded to the Village Board within forty five (45) days, or as otherwise agreed to by the Planning and Zoning Commission and the applicant; (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

   (2) Any requested exceptions or modifications from this title or from the Village subdivision control ordinance shall be clearly documented in the statement of findings of fact and recommendations; (Ord. 87-29, 6-22-1987)

   (3) In the event of a favorable recommendation, the planning and zoning commission shall specify particular conditions to be incorporated into an approval of the application, which may or may not include requested exceptions or modifications from this title;

4. At its next regularly scheduled meeting following receipt of the planning and zoning commission's recommendations, or such longer period as might be agreed to by the

applicant, the corporate authorities shall consider such ordinances and adopt such resolutions as required to grant final approval of the proposed development;

    5. The planning and zoning commission and the board of trustees need not approve any final plan which deviates from the concept plans where such deviation results in a change which would: (Ord. 87-29, 6-22-1987; amd. Ord. 2014-48, 10-27-2014)

       a. Alter the concept, character or intent of the overall development as set forth in the concept plan;

       b. Negatively affect the public health, welfare and safety;

       c. Substantially decrease the value of surrounding property;

       d. Decrease the aesthetics and functions of the natural environment, which shall include, but not be limited to, conditions pertaining to floodplains, soil and geologic characteristics and preservation of vegetation;

       e. Significantly reduce (by more than 50 percent) or eliminate the fifty foot (50') perimeter buffer yards which abut, or are across the street from, a residential district;

       f. Adversely affect the capacity of the public utilities to be constructed by or for the village, unless the developer agrees to eliminate any such adverse effect without cost to the village over and above the cost to have been incurred by the village, if any, prior to such change;

       g. Must be in accordance with good planning standards; and

    6. The corporate authorities shall not unreasonably withhold approval, nor impose any unreasonable restrictions or conditions thereon, with respect to any proposed development that is in substantial conformity with the approved concept plans and development ordinance for the district.

   I. Issuance Of Permits:

    1. Building and occupancy permits shall be required for each structure in a district.

    2. No building permit relating to any part of a district shall be issued prior to the approval of a final plan for such part of the district, in accordance with the provisions of subsection G of this section; provided, however, that:

       a. Construction of sewer, water and other utility improvements as well as street and roadway improvements may proceed at any time following adoption of the development ordinance by the board of trustees and execution of the ordinance by the property owners in accordance with subsection E of this section; and

       b. All construction shall be in accordance with the approved set of plans, requirements of this title and other applicable village ordinances, and any conditions for development that may have been imposed upon the subject property by the village board. (Ord. 87-29, 6-22-1987)

    3. The building and zoning official shall issue all necessary permits for all or part of the project once the applicant has demonstrated full compliance with all restrictions and/or conditions referenced in the development ordinance. (Ord. 87-29, 6-22-1987; amd. 2012 Code)

11-10A-12: APPLICATION OF PROVISIONS:

The provisions of this article shall control in the event of any conflict between a section of this article and other provision(s) of this title; otherwise, any applicable provision(s) of this title shall apply to a business park district. (Ord. 87-29, 6-22-1987; amd. 2012 Code)